Where, on an accounting by a guardian, it is shown that he unnecessarily sold at private sale, under the order of the county court, the lands of the ward for about half their value, under such circumstances as indicated indifference to her interest, if not dishonesty, he will be charged with the resulting loss, and interest thereon from the date of the sale.

·2. SAME—COMMISSIONS.

   Where a guardian sells an infant's land at a loss, under circumstances showing negligence, if not dishonesty, he will be denied any commissions.

In the matter of the judicial settlement of John Nowak, guardian ·of Stefani Owechi. Objections by special guardian sustained.

Fisher, Coatsworth & Wende, for John Nowak.
McGee & Rosenau, for Stefani Owechi.
Edward J. Rosenau, special guardian.

¶ 2. See Guardian and Ward, vol. 25, Cent. Dig. § 506.

MARCUS, S. This proceeding arises upon the judicial settlement of the guardian's accounts, to which objections have been filed by the special guardian on behalf of the infant. The main matter in contention grows out of lands sold, belonging to this infant, by virtue of an order made in infancy proceedings in the county court of Erie county. At the time of the sale of the property in question, Nos. 175–177 Sweet avenue, Buffalo, N. Y., there was a mortgage on the premises amounting to $1,400. The interest, taxes, and insurance amounted to $107, and the income therefrom was $282; leaving a net profit above the carrying charges of $175 for each year. The evidence disclosed the fact that an extension of the mortgage for five years was obtained by the guardian, which extended the time of payment of the principal sum to the year 1900. The evidence taken before the referee appointed by the county court to take the proof as to whether it was for the best interest of the infant to sell the property was given by the guardian and the party with whom the guardian had placed this infant, and was to the effect that the mortgage was due. The guardian himself, having obtained the extension, makes this testimony significant of his whole course of conduct in the transaction. His testimony in the infancy proceeding that the mortgagee was demanding payment of the principal sum was strange, in view of the fact that the mortgagee's agent, who alone had charge of matters in behalf of his mother, who was the owner of the mortgage, and was the only person with whom the guardian admitted he dealt, testified in this proceeding that at no time had he pressed the guardian for payment of any amount of the principal, and was at all times willing to allow the loan to stand, which fact itself is evidenced by the extension given by him to the guardian. Another element in this strange transaction comes to light from the fact that the premises, although sold for $1,700 under the order referred to, seemed to be sufficiently valuable for a loan association of this city to lend thereon the sum of $1,800, and a mortgage was executed by the purchaser to this association some two weeks before a deed was given to him by the guardian. The testimony further shows that in 1897 a loan was placed by the Buffalo Savings Bank upon the same premises for $1,800. No effort seems to have been made on the part of the guardian to procure a fair and reasonable amount for the property. The sale was a private one, and, while the evidence fails to disclose or connect the guardian with any financial gain in the transaction, it nevertheless shows the entire transaction with reference to the sale of this infant's land, and the proceedings had in the county court, if not actually dishonest, to be so thoroughly saturated with carelessness and indifference as to render this guardian liable.

Corruption in guardians should be punished, and conditions and circumstances which tend to lead to an inference that undue advantage has been taken from their position should be treated with suspicion. When a guardian acts with fidelity and such diligence and prudence as men of ordinary intelligence observe in managing their own affairs, and "if there is no mala fides,—nothing willful in the conduct of the trust,—the court will always favor him." But along

with this liberal view, which oftentimes reaches and covers honest errors of judgment,—the courts shielding guardians in the honest and faithful discharge of their duties,—the courts are nevertheless vigilant in protecting infants who are incapable of protecting themselves. In the determination of matters of this kind, it is of little consequence whether the acts of a guardian are characterized as dishonest, indifferent, or careless. "It matters little to an orphan child whether his interests are sacrificed and his prospects blighted by well-meaning ignorant or willful malice. Either is within the definition of misconduct,—a word which applies not to motive, but to the act." The care which a guardian should give to the interests of his ward requires good faith and diligence, together with circumspection and prudence.

While it is clear to me that the order to sell in the county court proceeding was obtained by fraud, to impeach such an order collaterally, were it possible, seems to be unnecessary, since the surrogate has control over the conduct and the settlement of the accounts of guardians. So that the conduct of this guardian with relation to the sale of this land in infancy proceedings, and the steps leading to the final order of sale made therein, can rightly be considered on this accounting, as bearing upon his general conduct, and to the care and duty incumbent upon him towards this trust. The necessity of the sale may be considered as bearing upon the question of benefit or loss sustained by this infant in such sale, and the good faith of the guardian in disposing of this property may here be questioned, not with the idea, however, of attacking the judgment of the county court, but solely for the purpose of determining whether the acts and circumstances connected with the guardian's disposition of this property under the order of the county court are to be treated with suspicion or censure, in view of all the circumstances connected therewith, or whether such sound discretion as men of ordinary intelligence use in their own affairs was applied in this transaction. The question of fraud arises as an incident to this accounting, and it seems to be the duty of this court to try it in the same manner as any other question of fact. It may seriously be doubted whether a remedy could be obtained on the part of this infant in any other court than this, since the proceedings on their face are regular in the county court, and there is nothing on the record to place purchasers upon their guard, and innocent third parties, as disclosed by the record in this court, are now in possession of at least part of the property, while a mortgage obtained by a savings bank in good faith covers the remaining part of the property. The uncontradicted testimony in this case placed the value of the premises in question at $3,500 at the time of the sale. The guardian shows by the account he presents to this court that the rent received for one month, namely, June 1 to July 1, 1895, for the premises in question, was $23.50. This amount of rent was received from that date in 1895 until the date of the sale, April 14, 1896, for each month; and with the taxes, interest, and insurance amounting to the sum of $107, the net income of $175 a year strongly corroborates the value placed upon these premises by the experts.

While some doubt exists in my mind as to the exact measure of damages in this proceeding, I am constrained to hold that the guardian be directed to charge his accounts with the sum of $1,800, together with interest thereon from the date of the sale, which sum represents the difference in the price of the premises sold by order of the county court, and the value placed upon the same by uncontradicted testimony produced in this court, and the further sum of $100, admitted by the said guardian to belong to this infant. For mismanagement of the property of his ward, and for the wrong and injustice done her, as also the failure to separate her funds from his own, no commissions will be allowed.

Decreed accordingly.